**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

ELECTRONICALLY FILED
Aug 20 2018
U.S. DISTRICT COURT
Northern District of WV

FRANK GAUS, III and KRISTI GAUS, )
His Wife, )
             )    Civil Action No. __1:18-cv-160 (Keeley)__
          Plaintiffs )
             )    Civil Action Complaint
          v. )
             )
THE GENERAL SERVICES ADMINIS- )
TRATION OF THE UNITED STATES OF )
AMERICA, THE NATIONAL OCEANIC )
AND ATMOSPHERIC ADMINIS- )
TRATION OF THE UNITED STATES OF )
AMERICA, VERTEX NON-PROFIT )
HOLDINGS, INC., A Corporation, KPN )
ARCHITECTS, LLC, A Limited Liability )
Company and MARCH-WESTIN COM- )
PANY, INC., A Corporation, EYP MISS- )
ION CRITICAL FACILITIES, INC., A )
Corporation, EXP GLOBAL, INC., a )
Corporation, CBRE GROUP, INC.., a )
Corporation, and McDONOUGH, )
BOLYARD, PECK, INC., A Corporation )
             )
          Defendants )

## CIVIL ACTION COMPLAINT

AND NOW, come the Plaintiffs, FRANK GAUS, III and KRISTI GAUS, His Wife, by their attorneys, Vincent Trivelli, The Law Office of Vincent Trivelli, PLLC, and file the within Civil Action Complaint against the Defendants, THE GENERAL SERVICES ADMINISTRATION OF THE UNITED STATES OF AMERICA, THE NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION OF THE UNITED STATES OF AMERICA, VERTEX NON-PROFIT HOLDINGS, INC., A Corporation, KPN ARCHITECTS, LLC, A

1

Limited Liability Company, MARCH-WESTIN COMPANY, INC., A Corporation, EYP MISSION CRITICAL FACILITIES, INC., A Corporation, EXP GLOBAL, INC., a Corporation, CBRE GROUP, INC., a Corporation, and McDONOUGH, BOLYARD, PECK, INC., A Corporation, averring in support thereof the following:

## INTRODUCTION

1.      The Plaintiffs bring this action relative to their claim for personal injuries to the Plaintiff, Frank Gaus, III ("Mr. Gaus") and the loss of consortium to the Plaintiff, Kristi Gaus ("Mrs. Gaus"), his wife, pursuant to the facts hereinafter averred.

## PARTIES

2.      Mr. Gaus is an adult individual now residing at 41 Maple Drive, Wexford, Allegheny County, Pennsylvania, in the Western District of Pennsylvania and he is a citizen of the Commonwealth of Pennsylvania.

3.      Mrs. Gaus is an adult individual now residing at 41 Maple Drive, Wexford, Allegheny County, Pennsylvania, in the Western District of Pennsylvania and she is a citizen of the Commonwealth of Pennsylvania.  She is the wife of Mr. Gaus.

4.      The Defendant, GENERAL SERVICES ADMINISTRATION OF THE UNITED STATES OF AMERICA, ("GSA") is an administrative agency of the United States of America, with a principal office located at The Strawbridge Building, 20 North Eighth Street, Philadelphia, Pennsylvania 19107-3191.

5.      The Defendant, THE NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION OF THE UNITED STATES OF AMERICA, ("NOAA") is an administrative agency of the United States of America, with a principal office located at 1401

Constitution Avenue NW, Room 5128, Washington, DC 20230.

6.    The Defendant, VERTEX NON-PROFIT HOLDINGS, INC. ("Vertex"), is a corporation believed to be organized and existing under the laws of the State of West Virginia and it maintains its principal office and place of business at 1000 Tech Drive, No. 8000, Fairmont, West Virginia 26554.

7.    The Defendant, KPN ARCHITECTS, LLC ("KPN"), is a limited liability company believed to be organized under the laws of the State of Maryland and it maintains its principal office and place of business at 3600 Clipper Mill Road, No. 228, Baltimore, Maryland 21211.  The Plaintiffs believe and therefore aver that KPN also does business in the Northern District of West Virginia.

8.    The Defendant, MARCH-WESTIN COMPANY, INC. ("March-Westin"), is a corporation believed to be organized and existing under the laws of the State of West Virginia and it maintains its principal office and place of business at 360 Frontier Street, Morgantown, West Virginia 26505.

9.    The Defendant, EYP MISSION CRITICAL FACILITIES, INC., ("EYP") is a corporation believed to be organized and existing under the laws of the State of New York and it maintains its principal office and place of business at 440 Park Avenue South, #14, New York, NY 10016.  The Plaintiffs believe and therefore aver that EYP also does business in the Northern District of West Virginia.

10.    The Defendant, EXP GLOBAL, INC., ("EXP Global") is a corporation believed to be organized and existing under the laws of the country of Canada and it maintains its principal office and place of business at 56 Queen Street East, Suite 301, Brampton, Ontario, Canada  L6V

4M8.  The Plaintiffs believe and therefore aver that EXP Global also does business in the Northern District of West Virginia.

11.     The Defendant, CBRE GROUP, INC., ("CBRE") is a corporation believed to be organized and existing under the laws of the country of the Netherlands and it maintains its principal office and place of business in the Netherlands.  The Plaintiffs believe and therefore aver that CBRE also does business in the Northern District of West Virginia.

12.     The Defendant, McDONOUGH, BOLYARD, PECK, INC., ("MBP") is a corporation believed to be organized and existing under the laws of the Commonwealth of Virginia and it maintains its principal office and place of business at Williams Plaza 1, 3040 Williams Drive, Suite 300, Fairfax, VA 22031.  The Plaintiffs believe and therefore aver that MBP also does business in the Northern District of West Virginia.

## JURISDICTION AND VENUE

13.     The claims asserted herein against GSA and NOAA are cognizable pursuant to the terms of the Federal Tort Claims Act, 28 U.S.C.A. § 2671, et. seq.  The claims asserted against all the other Defendants are cognizable pursuant to the concept of pendent jurisdiction and as related state claims and they are separately cognizable by virtue of the diversity of citizenship of some of the parties and an amount in controversy, which exceeds $75,000.00, based on the information and belief of the Plaintiffs.  As such this Court has original jurisdiction pursuant to 28 U.S.C., Sec. 1332 as well as by 28 U.S.C.A. § 2671, et. seq.

## STATEMENT OF COMMON FACTS

14.     On or about May 7, 2015, Mr. Gaus was employed by High Voltage Maintenance Company as an electrician.

4

15.     On said date, Mr. Gaus was dispatched by his employer to the NOAA Supercomputing Center located at the Robert H. Mohollan Research Center in Fairmont, West Virginia, which is located in the Northern District of West Virginia, to perform certain electrical maintenance testing and diagnoses to the electrical system in that facility.

16.     To perform the required services, Mr. Gaus was required to consult certain drawings of the electrical system at said facility so that he could perform the required services in a safe manner since he had to make certain electrical connections and in so doing, he had to be aware of the location of various surge arrestors so that he could avoid receiving injurious and possibly fatal electrical shocks.

17.     Mr. Gaus was provided with a set of electrical drawings to use in the course of performing the required maintenance testing, which drawings the Plaintiffs believe were prepared in whole or in part by KPN and/or March-Westin and which were or should have been examined by GSA, NOAA and Vertex.

18.     The drawings that were provided to him showed that the relevant surge arrestors were located on the "load" side of the main breakers of the electrical system.  By being shown as located on the "load" side, it appeared to Mr. Gaus that he could safely locate a voltage verification test point in order to determine if he could safely begin maintenance testing..

19.     Unknown to Mr. Gaus, the surge arrestors were actually located on the "line" side of the main breakers of the electrical system.  By being on the "line" side, they were located on the incoming 12,470 V side of the main breaker and such that they represented a hazard to anyone performing maintenance testing to the electrical system.

20.     By being located on the "line" side of the main breaker, the surge arrestors were

improperly located and they did not and could not serve their intended purpose.

21.     Other than by viewing the aforesaid drawings, there was no other way for Mr. Gaus to reasonably be aware of the location of the surge arrestors.

22.     It is common and accepted practice in the electricians' trade for electricians to rely upon drawings such as the drawings that were provided to Mr. Gaus.

23.     In reliance upon the aforesaid drawings, Mr. Gaus commenced trying to locate a voltage verification test point in order to determine if he could safely begin the needed electrical maintenance testing and in doing so, he received a severe electrical shock and suffered arc flash burns.

24.     As a direct and proximate result of the foregoing events, Mr. Gaus suffered the following injuries, all of which are severe and which may be permanent:

   (a)     He suffered a five percent total body surface burning of his face, neck, both upper extremities and his left lower extremity;

   (b)     He suffered first, second and third degree burns of the areas described above;

   (c)     He suffered and still suffers from webbing of certain of his extremities;

   (d)     He suffered and still suffers from extreme disfigurement and scarring of various portions of his body;

   (e)     He suffered from and may continue to suffer from infection and abscesses of some or all of the parts of his body that were burnt;

   (f)     He suffered from and may continue to suffer from MERSA;

   (g)     He suffered from and continues to suffer from Post-Traumatic Stress Disorder, panic attacks and anxiety;

   (h)     He has had to undergo painful surgeries to graft skin to the burnt parts of his body;

(i)     He has had to wear and still wears painful and restrictive compression garments and

(j)     He has suffered from, still suffers from and will continue to suffer from severe pain.

25.     As a direct and proximate result of the foregoing, Mr. Gaus suffered the following damages:

(a)     He has suffered and will continued to suffer great pain, anguish, scarring and disfigurement and embarrassment; and

(b)     He has suffered irreparable injury to his hand and he has lost the effective use of it, either partially or totally, and

(c)     He has incurred medical, hospital, therapy and drug expenses for his diagnosis, treatment, care and recovery for the damages and injuries above-described and he will continue to incur all the same expenses for the same purposes in the future; and

(d)     He has incurred a loss of earnings and a permanent loss of earning capacity.

## FRANK GAUS, III  V. GSA

26.     The Plaintiffs incorporate herein by reference Paragraphs 1 through 25 of this Complaint.

27.     GSA and NOAA engaged in a co-operative effort to find and arrange for the development of the facility described in Paragraph 15 hereof.

28.     In so doing, GSA arranged for and entered into a long-term lease with Vertex for the facility described in Paragraph 15 hereof.

29.     The Plaintiffs believe and therefore aver that while or after the aforesaid lease was being developed, GSA participated either jointly or solely in the choice of a general contractor and

other professionals to construct or consult upon the construction of the facility described in Paragraph 15.

30.     The Plaintiffs believe and therefore aver that while or after the aforesaid lease was being developed, GSA participated either jointly or solely in the choice of an architect and other professionals to prepare and to review plans for the construction of the facility described in Paragraph 15.

31.     The Plaintiffs believe and therefore aver that GSA either received and reviewed the electrical plans referred to in Paragraph 17 of this complaint, or if it did not, it should have obtained and reviewed them.

32.     The Plaintiffs believe and therefore aver that the injuries and damages suffered by both Plaintiffs were proximately caused, in whole or in part, by the negligent conduct of GSA in the following particulars—

(a)     In failing to properly review the aforesaid plans and the actual placement of surge arrestors to discover that the surge arrestors were either improperly placed in the electrical system or that they were improperly located on the drawings;

(b)     In failing to inspect or require that the electrical drawings were inspected before the electrical system was installed;

(c)     In failing to inspect or require the inspection of the electrical system as it was being installed to verify that the installation was being done properly;

(d)     In failing to inspect or require the inspection of the electrical system as it was being installed to verify that the actual installation was as shown on the drawings; and

(e)     In failing to have in place and/or to follow recognized and well-known protocols for the inspection and installation of electrical systems to verify that the installation was done properly and that the electrical drawings for the electrical system properly showed the correct installation of the system.

33.     As required by law, the Plaintiffs provided notice of the claim described in this complaint to GSA on the required forms, said notice and supporting documents having been provided to GSA on April 27, 2016.

34.     To date, GSA has not made any attempt to resolve the said claim and has neither accepted or rejected it.

35.     Since more than six months have elapsed since the legally required notices have been given to GSA relative to this claim, the Plaintiffs are exercising their option to treat the claim as denied so that this litigation may proceed.

36.     When the Plaintiffs submitted their claim to GSA, they submitted it in the amount of $750,000.00 because at that time, it appeared that said amount was approximately the value of said claim.  Since that time, Mr. Gaus has had physical reverses that have caused his condition to worsen and it has now been determined that the injuries to his hand cannot be resolved or reversed, such that his claim is now worth in excess of $750,000.00 and due to the ongoing nature of his injuries, the extent of his damages will increase in the future in an amount not now presently known.

### FRANK GAUS, III  V. NOAA

37.     The Plaintiffs incorporate herein by reference Paragraphs 1 through 36 of this Complaint.

38.     GSA and NOAA engaged in a co-operative effort to find and arrange for the development of the facility described in Paragraph 15 hereof.

39.     In so doing, GSA and NOAA arranged for and entered into a long-term lease with Vertex for the facility described in Paragraph 15 hereof.

9

40.     The Plaintiffs believe and therefore aver that while or after the aforesaid lease was being developed, NOAA participated either jointly or solely in the choice of a general contractor and other professionals to construct or consult upon the construction of the facility described in Paragraph 15.

41.     The Plaintiffs believe and therefore aver that while or after the aforesaid lease was being developed, NOAA participated either jointly or solely in the choice of an architect and other professionals to prepare and to review plans for the construction of the facility described in Paragraph 15.

42.     The Plaintiffs believe and therefore aver that NOAA either received and reviewed the electrical plans referred to in Paragraph 17 of this complaint, or if it did not, it should have obtained and reviewed them.

43.     The work performed by Mr. Gaus as above described was required to be done by NOAA and the performance of the work was approved by NOAA.

44.     The Plaintiffs believe and therefore aver that the injuries and damages suffered by both Plaintiffs were proximately caused, in whole or in part, by the negligent conduct of NOAA in the following particulars—

(a)     In failing to properly review the aforesaid plans and the actual placement of surge arrestors to discover that the surge arrestors were either improperly placed in the electrical system or that they were improperly located on the drawings;

(b)     In failing to inspect or require that the electrical drawings were inspected before the electrical system was installed;

(c)     In failing to inspect or require the inspection of the electrical system as it was being installed to verify that the installation was being done properly;

(d)     In failing to inspect or require the inspection of the electrical system as it was being installed to verify that the actual installation was as shown on the drawings; and

10

(e)    In failing to have in place and/or to follow recognized and well-known protocols for the inspection and installation of electrical systems to verify that the installation was done properly and that the electrical drawings for the electrical system properly showed the correct installation of the system.

45.    As required by law, the Plaintiffs provided notice of the claim described in this complaint to NOAA on the required forms, said notice and supporting documents having been provided to NOAA on April 27, 2016.

46.    To date, NOAA has not made any attempt to resolve the said claim and has not either accepted or rejected it.

47.    Since more than six months have elapsed since the legally required notices have been given to NOAA relative to this claim, the Plaintiffs are exercising their option to treat the claim as denied so that this litigation may proceed.

48.    When the Plaintiffs submitted their claim to NOAA, they submitted it in the amount of $750,000.00 because at that time, it appeared that said amount was approximately the value of said claim.  Since that time, Mr. Gaus has had physical reverses that have caused his condition to worsen and it has now been determined that the injuries to his hand cannot be resolved or reversed, such that his claim is now worth in excess of $750,000.00 and due to the ongoing nature of his injuries, the extent of his damages will increase in the future in an amount not now presently known.

## FRANK GAUS, III  V. VERTEX

49.    The Plaintiffs incorporate herein by reference Paragraphs 1 through 48 of this Complaint.

50.     GSA and NOAA engaged in a co-operative effort to find and arrange for the development of the facility described in Paragraph 15 hereof.

51.     In so doing, GSA and NOAA arranged for and entered into a long-term lease with Vertex for the facility described in Paragraph 15 hereof.

52.     The Plaintiffs believe and therefore aver that Vertex was invested with full, joint or partial authority relative to the construction and/or retrofitting of the facility described in Paragraph 15 hereof.

53.     The Plaintiffs believe and therefore aver that while or after the aforesaid lease was being developed, Vertex participated either jointly or solely in the choice of a general contractor and other professionals to construct or consult upon the construction of the facility described in Paragraph 15.

54.     The Plaintiffs believe and therefore aver that while or after the aforesaid lease was being developed, Vertex participated either jointly or solely in the choice of an architect and other professionals to prepare and to review plans for the construction of the facility described in Paragraph 15.

55.     The Plaintiffs believe and therefore aver that Vertex either received and reviewed the electrical plans referred to in Paragraph 17 of this complaint, or if it did not, it should have obtained and reviewed them.

56.     The Plaintiffs believe and therefore aver that the injuries and damages suffered by both Plaintiffs were proximately caused, in whole or in part, by the negligent conduct of Vertex in the following particulars—

(a)   In failing to properly review the aforesaid plans and the actual placement of surge arrestors to discover that the surge arrestors were either improperly placed in the electrical system or that they were improperly located on the drawings;

(b)   In failing to inspect or require that the electrical drawings were inspected before the electrical system was installed;

(c)   In failing to inspect or require the inspection of the electrical system as it was being installed to verify that the installation was being done properly;

(d)   In failing to inspect or require the inspection of the electrical system as it was being installed to verify that the actual installation was as shown on the drawings; and

(e)   In failing to have in place and/or to follow recognized and well-known protocols for the inspection and installation of electrical systems to verify that the installation was done properly and that the electrical drawings for the electrical system properly showed the correct installation of the system.

## FRANK GAUS, III  V. KPN

57.   The Plaintiffs incorporate herein by reference Paragraphs 1 through 56 of this Complaint.

58.   The Plaintiffs believe and therefore aver that KPN was engaged as an architect to prepare plans and specifications for the construction and/or retrofitting of the facility described in Paragraph 15 hereof.

59.   The Plaintiffs believe and therefore aver that KPN, solely or in consultation with some or all of the other Defendants, prepared the electrical drawings referred to in Paragraph 17.

60.   The Plaintiffs believe and therefore aver that the injuries and damages suffered by both Plaintiffs were proximately caused, in whole or in part, by the negligent conduct of KPN in the following particulars—

13

(a)   In failing to properly prepare the aforesaid plans and to properly locate the surge arrestors or to discover that the surge arrestors were either improperly placed in the electrical system or that they were improperly located on the drawings;

(b)   In failing to inspect or require that the electrical drawings were inspected before the electrical system was installed;

(c)   In failing to inspect or require that the electrical system as it was being installed was being inspected to verify that the installation was being done properly;

(d)   In failing to inspect the electrical system as it was being installed to verify  that the actual installation was as shown on the drawings; and

(e)   In failing to have in place and/or to follow recognized and well-known protocols for the installation of electrical systems to verify that the installation was done properly and that the electrical drawings for the electrical system properly showed the correct installation of the system.

## FRANK GAUS, III  V. MARCH-WESTIN

61.    The Plaintiffs incorporate herein by reference Paragraphs 1 through 60 of this Complaint.

62.    The Plaintiffs believe and therefore aver that March-Westin was engaged as the general contractor for the construction and/or retrofitting of the facility described in Paragraph 15 hereof.

63.    The Plaintiffs believe and therefore aver that March-Westin did, solely or in consultation with some or all of the other Defendants, prepare the electrical drawings referred to in Paragraph 17.

64.    The Plaintiffs believe and therefore aver that the injuries and damages suffered by both Plaintiffs were proximately caused, in whole or in part, by the negligent conduct of March-Westin in the following particulars—

14

(a)     In failing to properly review the aforesaid plans and the actual placement of surge arrestors to discover that the surge arrestors were either improperly placed in the electrical system or that they were improperly located on the drawings;

(b)     In failing to inspect or to require that the electrical drawings were inspected before the electrical system was installed;

(c)     In failing to inspect the electrical system as it was being installed to verify  that the installation was being done properly;

(d)     In failing to inspect the electrical system as it was being installed to verify  that the actual installation was as shown on the drawings; and

(e)     In failing to have in place and/or to follow recognized and well-known protocols for the installation of electrical systems to verify that the installation was done properly and that the electrical drawings for the electrical system properly showed the correct installation of the system.

## <u>FRANK GAUS, III  V. EYP</u>

65.     The Plaintiffs incorporate herein by reference Paragraphs 1 through 64 of this Complaint.

66.     The Plaintiffs believe and therefore aver that EYP was engaged to design the electrical system at the facility described in Paragraph 15 hereof.

67.     The Plaintiffs believe and therefore aver that EYP did, solely or in consultation with some or all of the other Defendants, prepare, oversee or review the electrical drawings referred to in Paragraph 17.

68.     The Plaintiffs believe and therefore aver that the injuries and damages suffered by both Plaintiffs were proximately caused, in whole or in part, by the negligent conduct of EYP in the following particulars—

(a)     In failing to either properly prepare or review the aforesaid plans and the actual placement of surge arrestors to discover that the surge arrestors were either improperly placed in the electrical system or that they were improperly located on the drawings;

15

(b)     In failing to inspect or to require that the electrical drawings were inspected before the electrical system was installed;

(c)     In failing to inspect the electrical system as it was being installed to verify   that the installation was being done properly;

(d)     In failing to inspect the electrical system as it was being installed to verify   that the actual installation was as shown on the drawings; and

(e)     In failing to have in place and/or to follow recognized and well-known protocols for the installation of electrical systems to verify that the installation was done properly and that the electrical drawings for the electrical system properly showed the correct installation of the system.

## FRANK GAUS, III V. EXP GLOBAL

69.     The Plaintiffs incorporate herein by reference Paragraphs 1 through 68 of this Complaint.

70.     The Plaintiffs believe and therefore aver that EXP Global was engaged as an engineering consultant to review and consult upon the systems, including the electrical system, at the facility described in Paragraph 15 hereof.

71.     The Plaintiffs believe and therefore aver that either GSA or NOAA or both were the entities which engaged EXP Global to act as an engineering consultant.

72.     The Plaintiffs believe and therefore aver that EXP Global did, solely or in consultation with some or all of the other Defendants, prepare, oversee or review the electrical drawings referred to in Paragraph 17.

73.     The Plaintiffs believe and therefore aver that the injuries and damages suffered by both Plaintiffs were proximately caused, in whole or in part, by the negligent conduct of EXP Global in the following particulars—

(a)     In failing to either properly prepare or review the aforesaid plans and the actual placement of surge arrestors to discover that the surge arrestors were either improperly placed in the electrical system or that they were improperly located on the drawings;

(b)     In failing to inspect or to require that the electrical drawings were inspected before the electrical system was installed;

(c)     In failing to inspect the electrical system as it was being installed to verify that the installation was being done properly;

(d)     In failing to inspect the electrical system as it was being installed to verify that the actual installation was as shown on the drawings; and

(e)     In failing to have in place and/or to follow recognized and well-known protocols for the installation of electrical systems to verify that the installation was done properly and that the electrical drawings for the electrical system properly showed the correct installation of the system.

## FRANK GAUS, III  V. CBRE GROUP

74.     The Plaintiffs incorporate herein by reference Paragraphs 1 through 73 of this Complaint.

75.     The Plaintiffs believe and therefore aver that CBRE Group was engaged to oversee the work being done at the facility described in Paragraph 15 hereof and was also designed to comment upon the design the electrical system at the facility described in Paragraph 15 hereof.

76.     The Plaintiffs believe and therefore aver that CBRE Group did, solely or in consultation with some or all of the other Defendants, prepare, oversee or review the electrical drawings referred to in Paragraph 17.

77.     The Plaintiffs believe and therefore aver that the injuries and damages suffered by both Plaintiffs were proximately caused, in whole or in part, by the negligent conduct of CBRE Group in the following particulars—

(a)     In failing to either properly prepare or review the aforesaid plans and the actual placement of surge arrestors to discover that the surge arrestors were either

17

improperly placed in the electrical system or that they were improperly located on the drawings;

(b)     In failing to inspect or to require that the electrical drawings were inspected before the electrical system was installed;

(c)     In failing to inspect the electrical system as it was being installed to verify that the installation was being done properly;

(d)     In failing to inspect the electrical system as it was being installed to verify that the actual installation was as shown on the drawings; and

(e)     In failing to have in place and/or to follow recognized and well-known protocols for the installation of electrical systems to verify that the installation was done properly and that the electrical drawings for the electrical system properly showed the correct installation of the system.


## FRANK GAUS, III  V. MBP

78.     The Plaintiffs incorporate herein by reference Paragraphs 1 through 77 of this Complaint.

79.     The Plaintiffs believe and therefore aver that Facilities was engaged to review and comment upon the construction of the facility described in Paragraph 15 hereof and was also designed to comment upon the design the electrical system at the facility described in Paragraph 15 hereof.

80.     The Plaintiffs believe and therefore aver that MBP did, solely or in consultation with some or all of the other Defendants, prepare, oversee or review the electrical drawings referred to in Paragraph 17.

81.     The Plaintiffs believe and therefore aver that the injuries and damages suffered by both Plaintiffs were proximately caused, in whole or in part, by the negligent conduct of MBP in the following particulars—

18

(a)     In failing to either properly prepare or review the aforesaid plans and the actual placement of surge arrestors to discover that the surge arrestors were either improperly placed in the electrical system or that they were improperly located on the drawings;

(b)     In failing to inspect or to require that the electrical drawings were inspected before the electrical system was installed;

(c)     In failing to inspect the electrical system as it was being installed to verify that the installation was being done properly;

(d)     In failing to inspect the electrical system as it was being installed to verify that the actual installation was as shown on the drawings; and

(e)     In failing to have in place and/or to follow recognized and well-known protocols for the installation of electrical systems to verify that the installation was done properly and that the electrical drawings for the electrical system properly showed the correct installation of the system.

## KRISTI GAUS  V. ALL DEFENDANTS

82.     The Plaintiffs incorporate herein by reference Paragraphs 1 through 81 of this Complaint.

83.     As a direct and proximate result of the foregoing, Mrs. Gaus suffered the following damages:

(a)     She has suffered and will continued to suffer the loss of the services, society, companionship and consortium of Mr. Gaus, her husband and

(b)     She has incurred medical, hospital, therapy and drug expenses for the diagnosis, treatment, care and recovery of Mr. Gaus for the damages and injuries above-described and she will continue to incur all the same expenses for the same purposes in the future.

WHEREFORE, the Plaintiffs each respectfully request your Honorable Court to enter judgment in favor of each of them and against the Defendants, THE GENERAL SERVICES ADMINISTRATION OF THE UNITED STATES OF AMERICA, THE NATIONAL OCEANIC

AND ATMOSPHERIC ADMINISTRATION OF THE UNITED STATES OF AMERICA, VERTEX NON-PROFIT HOLDINGS, INC., A Corporation, KPN ARCHITECTS, LLC, A Limited Liability Company and MARCH-WESTIN COMPANY, INC., EYP MISSION CRITICAL FACILITIES, INC., A Corporation, EXP GLOBAL, INC., a Corporation, CBRE GROUP, INC., a Corporation, and McDONOUGH, BOLYARD, PECK, INC., A Corporation, jointly and severally, in a sum in excess of $750,000.00.  The Plaintiffs further requests that this Court Order the Plaintiffs be awarded its costs and attorney fees incurred in this action and such other and further relief as is just and proper.

Plaintiffs,
By Counsel,


/s/ Vincent M. Trivelli
Vincent M. Trivelli (W 8015)
178 Chancery Row
Morgantown, WV, 26505
(304) 291-5223


Dated:  8/20/18