IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG


FRANK GAUS, III, and
KRISTI GAUS, His Wife,

        Plaintiffs,


v.                                      Civil Action Nos. 1:18-CV-160
                                                      c/w 1:19-CV-14
                                                       (Judge Kleeh)


THE UNITED STATES OF AMERICA,
VERTEX NON-PROFIT HOLDINGS, INC., a Corporation,
KPN ARCHITECTS, LLC, a Limited Liability Company,
MARCH-WESTIN COMPANY, INC., a Corporation,
EYP MISSION CRITICAL FACILITIES, INC., a Corporation,
EXP U.S. SERVICES, INC., a Corporation,
CBRE GROUP, INC., a Corporation, and
McDONOUGH BOLYARD PECK, INC., a Corporation,

        Defendants.


## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION [ECF NO. 136]

Pending before the Court is *Defendants GSA and NOAA's Motion to Dismiss for Lack of Subject Matter Jurisdiction* [ECF No. 136]. For the reasons discussed below, the Court grants the Motion.

## I.   PROCEDURAL HISTORY

On August 20, 2018, the Plaintiffs, Frank and Kristi Gaus ("Plaintiffs"), filed this action against a number of defendants, including the General Services Administration

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS**
**FOR LACK OF SUBJECT MATTER JURISDICTION [ECF NO. 136]**

("GSA") and the National Oceanic and Atmospheric Administration ("NOAA"). Plaintiffs filed an Amended Complaint on March 28, 2019, modifying Paragraph 11, after being advised of the proper name of Defendant EXP US Services, Inc. ECF No. 106.

By order dated April 25, 2019, this case was consolidated with Civil Action No. 1:19-CV-14. ECF No. 116. On June 6, 2019, GSA and NOAA moved to dismiss the Complaint against them for lack of subject matter jurisdiction. ECF No. 136. One argument proffered in support of their Motion was that GSA and NOAA are not proper defendants in a Federal Tort Claims Act ("FTCA") suit. By agreed order, the Court substituted the United States of America (the "Government") for GSA and NOAA as a defendant. The Government then advised the Court that it still intends to advance the other arguments contained in its Motion. Those arguments are the subject of this Memorandum Opinion and Order. The Motion is fully briefed and ripe for consideration.

## II.  STANDARD OF REVIEW

Rule 12 of the Federal Rules of Civil Procedure provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The burden of proving subject matter jurisdiction on a motion to dismiss lies with the party

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION [ECF NO. 136]**

asserting jurisdiction. CSX Transp., Inc. v. Gilkison, No. 5:05CV202, 2009 WL 426265, at *2 (N.D.W. Va. Feb. 19, 2009). No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating the merits of the jurisdictional claims. Id. at *2.

### III. BACKGROUND

**A.    The Complaint**

On or about May 7, 2015, Frank Gaus ("Mr. Gaus") was employed as an electrician at High Voltage Maintenance Company. Compl., ECF No. 1, at ¶ 14. On that day, he sustained an electrical shock while performing electrical maintenance testing at the NOAA Supercomputing Center located at the Robert H. Mollohan Research Center in Fairmont, West Virginia (the "Supercomputing Center"). Id. ¶ 15. As part of his services at the Supercomputing Center, Mr. Gaus relied upon certain drawings to be aware of the locations of various surge arrestors and to avoid receiving electrical shocks. Id. ¶ 16.

Plaintiffs argue that in reliance on the drawings, Mr. Gaus tried to locate a voltage verification test point to determine whether he could safely begin his electrical testing, and when he did so, he received a severe electrical shock and suffered

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION [ECF NO. 136]**

arc flash burns. Id. ¶ 23. The drawings indicated that the surge arrestors were located on the "load" side of the main breakers, but they were actually located on the "line" side. Id. ¶ 18. Mr. Gaus contends that this location was improper and that "[b]y being on the 'line' side, they were located on the incoming 12,470 V side of the main breaker and . . . represented a hazard to anyone performing maintenance testing to the electrical system." Id. ¶¶ 19, 20. Mr. Gaus believes that the drawings were made, in whole or in part, by KPN Architects, LLC ("KPN") and/or March-Westin Company, Inc. ("March-Westin"), and were or should have been examined by the Government and Vertex Non-Profit Holdings, Inc. ("Vertex"). Id. ¶ 17. He writes that aside from the drawings, there was no other way for him to be aware of the surge arrestors' location. Id. ¶ 21.

Plaintiffs argue that "Mr. Gaus suffered the following injuries, all of which are severe and which may be permanent":

> (a) A five percent total body surface burning of his face, neck, both upper extremities and his left lower extremity;
>
> (b) First, second and third degree burns of the areas described above;
>
> (c) Webbing of certain of his extremities;
>
> (d) Extreme disfigurement and scarring of various portions of his body;

> (e) Infection and abscesses of some or all of the parts of his body that were burnt;
>
> (f) MERSA;
>
> (g) Post-Traumatic Stress Disorder, panic attacks and anxiety;
>
> (h) Painful surgeries to graft skin to the burnt parts of his body;
>
> (i) Pain from wearing restrictive compression garments; and
>
> (j) Severe pain.

Id. ¶ 24. Plaintiffs allege that Mr. Gaus has suffered the following damages:

> (a) Pain, anguish, scarring and disfigurement and embarrassment;
>
> (b) Irreparable injury to his hand and the effective use of his hand, either partially or totally;
>
> (c) Medical, hospital, therapy and drug expenses for his diagnosis, treatment, care and recovery; and
>
> (d) Loss of earnings and earning capacity.

Id. ¶ 25.

Plaintiffs argue that the Government "engaged in a co-operative effort to find and arrange for the development" of the Supercomputing Center. Id. ¶ 27. They write that the Government "arranged for and entered into a long-term lease with Vertex

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION [ECF NO. 136]**

for" the Supercomputing Center. Id. ¶ 28. Plaintiffs argue that
the Government participated in the choice of a general
contractor and other professionals to construct or consult upon
the construction of the facility. Id. ¶ 29. Further, they argue,
the Government participated in the choice of an architect and
other professionals to prepare and review plans for the
construction of the facility. Id. ¶ 30. Plaintiffs argue that the
Government received and reviewed the electrical plans, or if it
did not, it should have. Id. ¶ 31. Plaintiffs cite the following
"negligent conduct" by the Government:

    (a)   Failure to properly review the aforesaid
          plans and the placement of surge protectors;

    (b)   Failure to inspect or require that the
          electrical drawings were inspected before
          the electrical system was installed;

    (c)   Failure to inspect or require the inspection
          of the electrical system as it was being
          installed to verify that it was being done
          properly;

    (d)   Failure to inspect or require the inspection
          of the electrical system as it was being
          installed to verify that the actual
          installation was as show on the drawings;
          and

    (e)   Failure to have in place and/or follow
          recognized and well-known protocols for the
          inspection and installation of electrical
          systems to verify that the installation was
          done properly and that the electrical
          drawings for the electrical system properly

6

showed the correct installation of the system.

Id. ¶ 32.

**B.    The Lease**

The Government does not own the buildings that house the Supercomputing Center; it leases the buildings from Vertex. See ECF No. 136-3, Attachment A, at US12451. As part of Vertex's and the Government's design-build lease, Vertex was to design alterations to the space to meet the Government's requirements and then construct the space based on that design. See id. at US12453, ¶ 13. Pursuant to the lease, Vertex was responsible for selecting its general contractor and architect. See id. at US12475-76. Vertex, through its chosen contractors, March-Westin (general contractor for the construction project) and KPN (designer for the project), designed alterations to the I-79 Technology Park Research Center based on NOAA's Program of Requirements ("POR") and Final Concept Basis of Design ("BOD") as provided by GSA. See id. at US12456, ¶ 14; see also US12475-77, US12503, US12980-86. The building's as-built drawings,[1] including the electrical drawings, were prepared by Vertex. See Butler Decl., ECF No. 136-8, at ¶ 18.

---

[1] These are a set of drawings submitted by a contractor upon completion of a project or a particular job.

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION [ECF NO. 136]**

The Government admits that it did review and approve Vertex's design and provide Vertex with review comments. It contends, however, that the purpose of its review and approval, in accordance with the terms of the lease, was limited to ensuring the design's conformance to the specific requirements of the lease and the POR and the Government's needs as they applied to the specific leased space. See Ex. 1, Attachment A, ECF No. 136-3, at 12502-03, ¶¶ 5.5-5.6. The Government's review and approval was not for the purpose of ensuring the constructability of the design or otherwise providing quality control for Vertex. Id. The Government points out that, significantly, Paragraph 5.5 of the lease, at Section B, states, **"THE LESSOR REMAINS SOLELY RESPONSIBLE FOR DESIGNING, CONSTRUCTING, OPERATING, AND MAINTAINING THE LEASED PREMISES IN FULL ACCORDANCE WITH THE REQUIREMENTS OF THE LEASE."** Id. ¶ 5.5.

## IV.  DISCUSSION

Federal courts generally lack subject matter jurisdiction to address lawsuits against the federal government unless the United States expressly consents to be sued by waiving sovereign immunity. FDIC v. Meyer, 510 U.S. 471, 475 (1994). The FTCA, 28 U.S.C. § 1346, is a waiver of sovereign immunity when the federal government "would be liable to the claimant in

accordance with the law of the place where the act or omission occurred" for certain torts, such as negligence, committed by federal government employees acting within the scope of their employment. 28 U.S.C. § 1346(b)(1). Within the FTCA, there are exceptions under which the federal government still may not be sued. Two such exceptions are the "independent contractor exception" and the "discretionary function exception." These will be discussed in turn.

## A.   Independent Contractor Exception

As described above, the FTCA is a waiver of sovereign immunity for certain torts committed by federal government employees acting within the scope of their employment. "'Employee of the government' includes . . . officers or employees of any federal agency, members of the military or naval forces of the United States, . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States[.]" 28 U.S.C. § 2671. "Federal agency," however, "does not include any contractor with the United States." Id. Generally, if the conduct in question was performed by an independent contractor, the district court does not have subject matter jurisdiction over the claim. See Robb v. United States, 80 F.3d 884, 887 (4th

9

Cir. 1996); see also Wood v. Standard Prods. Co., 671 F.2d 825, 829 (4th Cir. 1982). Here, Plaintiffs do not argue that Vertex was not an independent contractor, but they argue that the Government had a duty to review and inspect its work. See ECF No. 149 at 12.

**B.   Discretionary Function Exception**

The discretionary function exception applies to the following:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The exception "insulates the United States from liability for its agents' and employees' performance of duties involving discretionary decisions." Williams v. United States, 50 F.3d 299, 308 (4th Cir. 1995). The purpose of this exception, as the Supreme Court of the United States has explained, is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action

in tort." United States v. S.A. Empresa de Viacao Aerea Rio
Grandense (Varig Airlines), 467 U.S. 797, 814 (1984).

In deciding whether the discretionary function exception
applies, courts apply a two-step test. "First, the Court must
consider the nature of the conduct and determine whether it
involves an 'element of judgment or choice.'" Little v. United
States, No. 5:11CV41, 2014 WL 4102377, at *5 (N.D.W. Va. Aug.
18, 2014) (citing United States v. Gaubert, 499 U.S. 315, 322
(1991)). "If a statute or regulation mandates a certain course
of action, there is no element of discretion." Id. (citing
Branch v. United States, No. 2:05cv423, 2006 WL 1770995, at *3
(E.D. Va. June 22, 2006)). On the other hand, conduct is
discretionary if the actor is entrusted to exercise judgment or
choice. Gaubert, 499 U.S. at 322–23. The second step is to
"determine whether that judgment is grounded in considerations
of public policy." Little, 2014 WL 4102377, at *5. Finally, the
plaintiff bears "the burden of proof to show an unequivocal
waiver of sovereign immunity exists and to show that none of the
FTCA's waiver exceptions apply." LeRose v. United States, 285 F.
App'x 93, 96 (4th Cir. 2008).

MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION [ECF NO. 136]

C.    **Williams v. United States**

Williams v. United States, 50 F.3d 299 (4th Cir. 1995), by analyzing the interaction of the independent contractor exception and the discretionary function exception, is particularly instructive here. In Williams, the United States Court of Appeals for the Fourth Circuit held that

> [t]he decision to hire an independent contractor to render services for the United States is precisely the type of decision that the [discretionary function] exception is designed to shield from liability because it involves exercising judgment based on considerations of policy, and the case law clearly establishes that the award of contracts falls within the ambit of the discretionary function exception.

Id. at 310.

In Williams, the plaintiff was injured when she slipped and fell in the lobby of a building leased by the United States. Id. at 302. The United States had entered into a contract with a company to provide custodial and maintenance services in the building. Id. at 303. The contract included broad provisions (e.g. the maintenance company was "fully responsible for the management, operation, maintenance, repair and support operations" of the premises) along with more specific provisions (e.g. directing the company to keep the premises free of "trash and debris or foreign matter" and ensure that floors are "slip

12

resistant"). Id. The United States did not exercise day-to-day control or supervision over the maintenance company's employees or the work performed by them. Id. Under these facts, the court wrote, "If . . . [the company] is an independent contractor, . . . and not an agent or employee of the United States, the United States has not waived its sovereign immunity; accordingly, the case should be dismissed for want of jurisdiction under Rule 12(b)(1)." Id. at 304.

The Williams court was further unpersuaded by the argument that the Government was negligent because it "would have observed [this] condition" and because it permitted the condition to exist and failed to post "wet floor warnings" inside the premises. Id. It wrote that "the decision to engage an independent contractor . . . is grounded in policy because in contracting . . . , the United States had to balance the needs of the Premises and the desire to engage an independent contractor against the expense of engaging such services." Id. at 309. The court found that the decision to hire the contractor fell within the discretionary function exception. "Given that the decision to engage . . . [the contractor] falls within the ambit of the discretionary function exception, we find that in this case Williams' assertions that the United States was

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS**
**FOR LACK OF SUBJECT MATTER JURISDICTION [ECF NO. 136]**

negligent in inspecting and not posting warning signs cannot prevail because these decisions are embraced by the overarching decision to engage . . . [the contractor]." Id. at 310.

**D.  Analysis**

Here, as in Williams, the independent contractor exception and the discretionary function exception apply. Similarly, the contract here included broad responsibilities for Vertex. See Ex. 1, Attachment A, ECF No. 136-3, at 12502-03, ¶ 5.5. (stating that "**THE LESSOR REMAINS SOLELY RESPONSIBLE FOR DESIGNING, CONSTRUCTING, OPERATING, AND MAINTAINING THE LEASED PREMISES**"). The Government did not exercise day-to-day control over Vertex's activities.

Plaintiffs do not dispute that Vertex was an independent contractor of the Government. They agree that the Government did not prepare the drawings at issue. Plaintiffs allege, instead, that the Government failed to review, failed to inspect, and failed "to have in place and/or follow recognized and well-known protocols for the inspection and installation of electrical systems to verify that the installation was done properly and that the electrical drawings for the electrical system properly showed the correct installation system." Compl., ECF No. 1, at ¶ 32. This is similar to the plaintiff's allegation in Williams

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION [ECF NO. 136]**

that the Government permitted the dangerous condition to exist. The alleged failure of the Government to verify that the electrical drawings were proper was "embraced by the overall decision" to hire Vertex. See Williams, 50 F.3d at 310. For those reasons, the independent contractor exception and the discretionary function exception apply. Plaintiffs have failed to show that the Government unequivocally waived its sovereign immunity.

## V.    CONCLUSION

For the reasons discussed above, the Government's Motion to Dismiss [ECF No. 136] is **GRANTED** for lack of subject matter jurisdiction. All claims against the Government in this action are hereby **DISMISSED WITH PREJUDICE.**

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: March 17, 2020

/s/ Thomas S. Kleeh
_____
THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE