IN THE UNITED STATES DISRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

**FRANK GAUS, III and KRISTI GAUS,**

        Plaintiffs,

v.                         Civil Action Nos. 1:18-CV-160
                                     c/w 1:19-CV-14
                                     (JUDGE KLEEH)

**VERTEX NON-PROFIT HOLDINGS, INC.,**
**KPN ARCHITECTS, LLC,**
**MARCH-WESTIN COMPANY, INC.,**
**EYP MISSION CRITICAL FACILITIES, INC.,**
**CBRE GROUP, INC.,**
**MCDONOUGH, BOLYARD, PECK, INC., and**
**EXP US SERVICES, INC.,**

        Defendants,

and

**VERTEX NON-PROFIT HOLDINGS, INC.,**

        Third-Party Plaintiff,

v.

**TRI-COUNTY ELECTRIC COMPANY,**
**SQUARE-D COMPANY,**
**SCHNEIDER ELECTRIC USA,**

        Third-Party Defendants,

<u>**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS'**</u>
<u>**MOTIONS [ECF NOS. 303, 310] TO STRIKE PLAINTIFFS' EXPERTS**</u>

    This matter is before the undersigned Magistrate Judge pursuant to two Orders of Referral [ECF Nos. 307, 312] entered by the Honorable Thomas S. Kleeh, Chief United States District

1

Judge, on June 22, 2022 and June 24, 2022, respectively, concerning two motions by certain Defendants to strike Plaintiffs' expert witnesses.

To this end, the Court is in receipt of the first of the motions to strike, namely, Defendant/Third-Party Plaintiff, Vertex Non-Profit Holdings, Inc.'s ("Vertex") Motion to Strike Plaintiffs' Expert Witnesses [ECF No. 303] and memorandum in support [ECF No. 304] filed on June 21, 2022. The Court also is in receipt of Plaintiff's response [ECF No. 309], thereto, filed on June 24, 2022.

The Court also is in receipt of the second of the motions to strike, namely, Defendant McDonough, Bolyard, Peck, Inc.'s ("McDonough") Motion to Strike [ECF No. 310] and memorandum in support [ECF No. 311][1], thereof, filed on June 24, 2022. The Court also is in receipt of Plaintiff's response [ECF No. 313], thereto, also filed on June 24, 2022.[2]

---

[1] At oral argument before the undersigned on August 4, 2022, counsel for Vertex offered the only argument by a Defendant herein. At that hearing, McDonough's counsel confirmed on the record that its motion to strike is substantially similar to Vertex's.

[2] Along with Vertex's principal motion to strike, the Court also is in receipt of motions for joinder, and responses to those respective motions. By Orders dated June 29, 2022 [ECF No. 321], July 5, 2022 [ECF No. 328], and August 3, 2022 [ECF No. 334], Chief Judge Kleeh granted the various motions for joinder. The motions for joinder themselves, and any responses, are as follows:

(1) KPN Architects, LLC's Joinder [ECF No. 318] in Vertex's and McDonough's respective motions to strike, filed on June 28, 2022, and Plaintiff's responsive argument styled as an "answer" [ECF No. 317], also filed on June 28, 2022.

(2) Third-Party Defendant Schneider Electric USA, Inc.'s ("Schneider Electric") Joinder [ECF No. 322] in Vertex's motion to strike, filed on June 29, 2022, and Plaintiff's responsive argument styled as an "answer" [ECF No. 324], also filed on June 29, 2022.

(3) Schneider Electric's Joinder [ECF No. 323] in McDonough's motion to strike, filed on June 29, 2022, and Plaintiff's responsive argument styled as an "answer" [ECF No. 325], also filed on June 29, 2022.

(4) Tri-County Electric Company's Joinder [ECF No. 329] in Vertex's motion to strike, filed on July 5, 2022, and Plaintiff's responsive argument styled as an "answer" [ECF No. 331], filed on July 11, 2022.

(5) McDonough's Joinder [ECF No. 330] in Vertex's motion to strike, filed on July 8, 2022. There is no responsive filing from Plaintiff.

(6) March-Westin Company, Inc.'s Joinder [ECF No. 332] in Vertex's motion to strike, filed on August 1, 2022. There is no responsive filing from Plaintiff.

(7) EYP Mission Critical Facilities, Inc.'s Joinder in Vertex's motion to strike, filed on August 2, 2022. There is no responsive filing from Plaintiff.

The undersigned conducted a hearing on the two referred motions to strike on August 4, 2022. After a detailed review of the respective motions and responses, the various joinders in the motions and responses thereto, and having conducted the aforementioned hearing, the undersigned **FINDS** and **CONCLUDES** that the two motions to strike [ECF Nos. 303, 310] should be **DENIED** as more fully set forth herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Frank Gaus, III ("Gaus, III") brings personal injury causes of action for injuries suffered at his workplace stemming from an electrocution. Gaus, III's spouse, Kristi Gaus, brings a related cause of action for loss of consortium and for expenses for Gaus, III's medical care.

Gaus, III alleges that he was working as an electrician at the Robert H. Mollohan Research Center in Fairmont, Marion County, in the Northern District of West Virginia. His job was to perform testing on the electrical system in a facility there. He alleges that the electrical system drawings for the facility were faulty. In particular, Gaus, III states, it is critical to know the location of "surge arrestors," so as to avoid severe, even fatal, electrical shocks. Gaus, III alleges that the drawings depicted surge arrestors as being located on the "load" side of the electrical system, when in actuality, the surge arrestors were on the "line" side of the system and could not serve their purpose in that location. According to Gaus, III, the surge arrestors' location on the line side was improper. In the course of his work, Gaus, III needed to locate a test point for verifying voltage. In attempting to locate such a test point, because of the faulty electrical drawings and improper location of the surge arrestors, Gaus, III alleges, he suffered a severe electrical shock and arc flash burns.

Due to the failures of Defendants with responsibilities as to various aspects of design, construction, maintenance and operations at the facility where he was working, Gaus, III alleges

that he suffered certain injuries and has ongoing physical, mental, and emotional problems. Kristi Gaus alleges loss of consortium and certain financial loss.

Plaintiffs have named various expert witnesses who they intend to call at trial of this matter. As is common, those experts may be placed into two categories: (1) "liability" experts who would be called to explain how the drawings and conditions which Gaus, III encountered at the job site were faulty, and (2) "damages" experts, who are medical professionals, who would be called to testify as to the harm Gaus, III suffered as a result.

In particular, Plaintiffs would call the following liability experts:

a) Frank Gaus, II ("Gaus, II"), who is Gaus, III's father, an "electrical tester," and Gaus, III's co-worker. From information provided during the hearing before the undersigned, it appears that the principal reason for Gaus, II's testimony is to explain how the drawings of the electrical system which Gaus, III relied upon were faulty.

b) Gaus, III himself, who also is an electrical tester, and would provide testimony the same as or similar to his father's, principally about how the electrical drawings which he relied upon were faulty.

c) Rick L. Boyer, an electrical engineer. During the hearing before the undersigned, Plaintiffs' counsel stated on the record that he would withdraw Mr. Boyer as an expert altogether in this matter.

Further, Plaintiffs would call the following damages experts:

a) Lourdes Castanon, M.D., a physician who treated Gaus, III for injuries sustained from the electrocution at issue.

b) Robert Kang. M.D., a plastic surgeon who treated Gaus, III for injuries sustained from the electrocution at issue.

c) Kathleen A. Brenckle, MSW, a mental health professional who treated Gaus, III after he sustained the injuries at issue, and who concluded that he suffered from post-traumatic stress disorder.

## II. ANALYSIS

In general terms, Defendants wish to strike Plaintiffs' experts because the expert disclosures are not sufficiently detailed. As such, Defendants argue, they do not comport to the requirements of the Federal Rules of Civil Procedure for specificity of expert disclosures. Defendants also complain that Gaus, II and Gaus, III are not electrical engineers, and fear that they may attempt to testify to issues about which they are not qualified.[3] Plaintiffs, however, argue that their disclosures are sufficiently detailed such that Defendants have fair notice of the experts' conclusions and how they reached those conclusions.

### A. The Standards

To this end, first, under the Federal Rules of Evidence:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

---

[3] In briefing, Defendants raise the issue of bias of Gaus, II and Gaus, III. At the hearing before the undersigned, it did not appear that this is a primary issue of concern for Defendants. More to the point, this is not an issue in itself which would merit striking Gaus, II and Gaus, III. Rather, it is a matter of argument to the trier of fact about the weight to accord their testimony. The undersigned does not address it further.

Fed. R. Evid. 702. And under seminal caselaw, the inquiry about whether expert conclusions and testimony should be permitted is guided as follows:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. We are confident that federal judges possess the capacity to undertake this review. Many factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test.

Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592–93 (1993) (footnote omitted). The Supreme Court, while cautioning that it was not establishing an ironclad checklist or test for admissibility of expert opinion, further articulated that:

> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

Id. at 594–95 (footnote omitted).

As to expert witnesses, the Federal Rules of Civil Procedure set forth a number of requirements for the content of expert reports when an expert is "one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). Notably, Plaintiffs emphasize that, with the exception of Mr. Boyer (whom Plaintiffs have withdrawn as an expert), the experts at issue here are not retained.

Thus, a separate provision in the Federal Rules of Civil Procedure governs the inquiry in this matter for experts who are not retained: "[I]f the witness is not required to provide a written report, this disclosure must state: (i) the subject matter on which the witness is expected to present

6

evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

The Fourth Circuit has recognized the role of such "hybrid witnesses" as contemplated by the Rules here, i.e. "fact witnesses with expertise that will inform their testimony." Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd., 31 F.4th 238, 253 (4th Cir. 2022). Such a witness offers testimony not because of their retention as an expert but rather from their "ground-level involvement in the events giving rise to the litigation." Id. (quoting Bob's Disc. Furniture Holdings, Inc., 633 F.3d 1, 6 (1st Cir. 2011)). To be clear, in the Timpson matter, the Fourth Circuit stated that failure to provide information required for such hybrid witnesses "typically will result in mandatory exclusion." Id. After all, under the Rules, "If a party fails to provide information or identify a witness as required by Rule 26(a) . . ., the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c).

### B. Conclusions as to Hybrid Expert Witnesses

The witnesses at issue in this category are (1) Gaus, II and Gaus, III, (2) Drs. Castanon and Kang, the treating physician and the plastic surgeon, respectively, and (3) Ms. Brenckle, the mental health professional. While Defendants take issue with the lack of detail in the written expert materials which Plaintiffs have provided, the hearing before the undersigned clarified the issues. Perhaps more to the point, the hearing before the undersigned resulted in certain helpful representations by Plaintiffs as to what their experts would and would not testify. While Defendants may disagree, such clarification sufficiently protects Defendants' interests here. After all, the issues of causation, liability and damages herein are not particularly novel or complicated. Plaintiffs' written expert disclosures are not a model of clarity, but with the parsing during the

hearing of the various experts' purposes, limitations, and expectations, the disclosures are sufficient under the Rules of Civil Procedure. Defendants' requests to strike these experts could well hamper Plaintiffs' ability to pursue their claims at all. Particularly given the clarification which Defendants gained at the hearing herein, the undersigned cannot abide such an extreme outcome.

First, as to Gaus, II and Gaus, III, they provided letters written years ago, setting forth certain conclusions. Defendants complain that the letters are stale and do not provide conclusions with adequate factual basis. Defendants also complain that the letters do not address the adequacy of the electrical system's design, and even if they did, Gaus, II and Gaus, III are not qualified to opine as to that design. At the hearing, Plaintiffs explained that the letters were generated pre-suit, when the matter was pending in Pennsylvania, before the matter was transferred to this Court. More importantly, Plaintiffs argued that Gaus, II and Gaus, III are experts – to a point. Plaintiffs will not have Gaus, II and Gaus, III testify to the propriety of the electrical system design, for instance, which seems to have been Defendants' main concern. Rather, Plaintiffs will have Gaus, II and Gaus, III explain how they can read electrical systems drawings and how the drawings in this instance were inaccurate. To that end, Plaintiffs bring some technical expertise to bear, but their testimony basically will be factual testimony, and will be limited in its scope. With that clarification and limitation, the undersigned **FINDS** that nothing about the spirit or letter of Fed. R. Civ. P. 37(c) requires striking Gaus, II and Gaus, III as experts.

Second, as to Drs. Castanon and Kang, Defendants complain that Plaintiffs have suggested that these providers will speak to <u>future</u> harm and need for <u>future</u> surgery and other medical treatment. Defendants take issue with the lack of any written material provided to support any such projections. However, at the hearing before the undersigned, Plaintiffs clarified that they would

not call these providers to testify as to future damages or need for future treatment. Per Plaintiffs, these providers' testimony will concern only the condition Gaus, III was in at the time they treated him, and the type and extent of treatment they provided. With that clarification and limitation, the undersigned **FINDS** that there is nothing about the information provided to Defendants necessitating that Drs. Castanon and Kang be stricken as experts.

Third and finally, as to Ms. Brenckle, Defendants likewise are concerned that she will testify as to Gaus, III's <u>future</u> harm and condition. But at the hearing, Plaintiffs again clarified that Ms. Brenckle will not testify as to issues Gaus, III may face in the future. Nonetheless, Defendants protest that they cannot discern whether Ms. Brenckle is qualified to determine whether Gaus, III suffered from post-traumatic stress disorder. Defendants also complain that they cannot discern the criteria by which she made the conclusion that Gaus, III suffered from that condition. As summarized on the record, however, the undersigned **FINDS** that Defendants can straightforwardly gather the additional information they desire in the course of a customary deposition. Additionally, as noted in the hearing before the undersigned, the Court **ORDERED** Plaintiffs to obtain Ms. Brenckle's curriculum vitae and provide it to Defendants within **seven (7) days of the date of that hearing**, which was held on August 4, 2022. As part of this disclosure, the Court **ORDERED** Plaintiffs to list Ms. Brenckle's qualifications to diagnose post-traumatic stress disorder.

Thus, the undersigned **FINDS** that Defendants' motions as to these hybrid expert witnesses should be **DENIED**.

### C. Conclusion as to Retained Expert

As noted above, the sole expert retained by Plaintiffs is Mr. Boyer, the electrical engineer. At the hearing before the undersigned, Plaintiffs' counsel stated on the record that Plaintiffs would not call Mr. Boyer to testify and would withdraw him from the list of experts they have disclosed.

Accordingly, the Court **FINDS** that, based upon this representation by Plaintiffs' counsel, Defendants' motions with respect to Mr. Boyer should be **DENIED as moot**.

### III. ORDER

Based on the foregoing, it is hereby **ORDERED** that Defendants' respective motions to strike Plaintiffs' experts [ECF Nos. 303, 310] are hereby **DENIED** on the merits as to (1) Gaus, II and Gaus, III, (2) Drs. Castanon and Kang, and (3) Ms. Brenckle. Further, it is hereby **ORDERED** that Defendants' motions to strike Plaintiffs' expert Mr. Boyer [ECF Nos. 303, 310] are hereby **DENIED as moot**.

It is all so **ORDERED**.

The Court **DIRECTS** the Clerk of the Court to provide a copy of this Order to any parties who appear *pro se* and all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED**: August 9, 2022.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE